JANE B. SMOCK, PLAINTIFF-APPELLANT, v. ATLANTIC CASUALTY INSURANCE COMPANY, A BODY CORPORATE, DEFENDANT-RESPONDENT, AND GEORGE S. KULIK, INTERVENOR-APPELLANT, AND THEODORE KULIK, INTERVENOR.

Superior Court of New Jersey
Appellate Division

Argued December 22, 1952—Decided April 6, 1953.

Before Judges McGEEHAN, BIGELOW and JAYNE.

*Mr. John Warren, Jr.*, argued the cause for intervenor-appellant George S. Kulik (*Mr. Benjamin J. Lipetz*, attorney; *Messrs. Parsons, Labrecque, Canzona & Combs*, and *Mr. John Warren, Jr.*, of counsel).

*Mr. Abraham I. Harkavy* argued the cause for defendant-respondent Atlantic Casualty Insurance Company (*Messrs. Harkavy & Lieb*, attorneys).

The opinion of the court was delivered by

McGEEHAN, S. J. A. D.   George S. Kulik was granted leave to intervene in the suit of Jane B. Smock against the Atlantic Casualty Insurance Company. By his complaint in intervention he sought reformation of an automobile liability policy No. 510035, issued by the defendant company to him, covering a 1937 Chevrolet panel delivery truck for the period beginning at 7 P. M. on January 13, 1949, and ending at 7 P. M. on January 13, 1950. The reformation he sought was "that the time '7 P. M.' inserted in the policy be stricken therefrom and that the court decree that the policy in question was effective from 12:01 A. M." on January 13, 1949. After a separate trial before the judge of the Law Division of the issues raised by this complaint in intervention, a judgment of dismissal in favor of the defendant Atlantic Casualty

Insurance Company, and against the intervenor George S. Kulik, was entered.

The trial judge made the following findings:

"Mr. George S. Kulik owned a Ford automobile that was insured by the defendant company under Policy. No. 543428 [453428], from June 1948 to June 1949; that that policy was in effect during that time; that on November 22, 1948 Mr. Kulik made written application to the Company, through its agent the Automobile Association of New Jersey, for coverage of a 1937 Chevrolet panel delivery truck; that that application became mislaid or was never acted upon; although sent to the Atlantic Casualty Insurance Company on November 22, 1948 it was not acted upon until attention was called to it on January 13, 1949; on that day an accident occurred to a truck which had been borrowed to replace the 1937 Chevrolet from a man by the name of Horodysky and was to be used in the place of the 1937 Chevrolet, which was laid up for repairs; that the company made a partial investigation, through its claim adjuster, and then notified Mr. Kulik, under date of January 18, 1949, that they did not cover him under the Policy No. 453428. That letter was immediately taken to counsel for Mr. Kulik by him and it was answered; Mr. Lipetz answered that by Exhibit P-9, which starts in, 'in re Kulik Policy 453428,' in which he states, 'I note in your letter that you make no mention of any insurance covering a truck owned by Mr. Kulik; If you will examine your records you will note there was an endorsement issued which covered the truck.'

There is no proof of any reply ever having been made to that letter.

Subsequently, a suit was started by Jane D. Smock against Kulik and Horodysky. Service was made upon George Kulik, who in turn turned it over to his counsel, Mr. Lipetz. Mr. Lipetz proceeded to defend the action, which resulted in a $15,000 judgment, and costs, in favor of Smock and against Kulik. There was also a judgment at the same time against Horodysky, but that judgment was subsequently set aside because service had never been made upon him and it was taken by default.

A second copy of the application was sent on the evening of the 13th of January to the Company. The Company sent it back with a notation on it that it was to be dated at 7 P. M or the date 7 P. M. inserted on it, as shown in Exhibit P-6. The policy was then written without the 7 P. M. being on it by Mr. McKenzie's office. It was again sent back to the Home Office, where the 7 P. M. was inserted. The Home Office, of course, had learned of the accident and this policy was written for the sole purpose of excluding the accident, which was the reason for its being dated at 7 P. M. instead of as it is printed at 12.01 A. M.

Nothing was ever done to correct this error; no attempt was made until 2 years later when Mr. Kulik, in the suit of Jane D. Smock vs. Atlantic Casualty Insurance Company, obtained an order

permitting him to intervene and have this policy reformed to go back to the time of 12.01 A. M., which would cover this accident.

It is rather inconceivable to me that had he thought it should be this policy should have covered the accident that immediate action would not have been taken to have it reformed, that the conditions of the policy would have been complied with, and those conditions, among others, are that papers, summons and complaint, should have been served upon the Company. That, admittedly, was not done.

And it was not until after the judgment and after Smock sued Atlantic Casualty Insurance Company that Kulik then sought to have the policy reformed.

Under those proofs I can not find any evidence of any fraud on the part of the defendant company. I think it was unfortunate that the coverage was not followed up by Mr. Kulik; he wanted his coverage; he thought he had it, but he didn't. His application expressly provides that it is not a binder, and he never did have any insurance, although I think had he followed it up more closely he undoubtedly would have obtained it, the Company would have issued this policy. However, he didn't. And the policy now reads that it takes effect after this accident."

The appellant contends that "upon the facts and evidence adduced at the trial the trial court should have granted reformation of defendant's insurance policy 510035." It is argued, first, that the reformation should have been granted upon the ground of fraud on the part of the defendant company; and, secondly, if "there is no basis in fact or evidence for the allegation of fraud," then upon the ground of mutual mistake.

On the morning of January 13, 1949, when the Horodysky truck, which had been borrowed by the intervenor as a substitute for his 1937 Chevrolet truck, struck and injured Jane B. Smock, the only automobile liability insurance issued to this intervenor by the defendant insurance company, and then in effect, was the automobile liability policy No. 453428 covering the intervenor's Ford coupe for the period beginning June 22, 1948 and ending June 22, 1949. Since the Horodysky truck was borrowed to replace a 1937 Chevrolet truck owned by the intervenor, and not to replace the Ford coupe, the "temporary use of substitute automobile" provision of the Ford coupe insurance policy did not cover the Horodysky truck on the morning of January 13, 1949. When the Smock accident was reported to the defendant insurance company,

the company made a partial investigation, and on January 18, 1949 wrote to the intervenor as follows:

"On or about June 23rd, 1948, this Company issued policy of insurance #453428 to you covering a 1937 Ford Coupe from June 22nd, 1948 to June 22nd, 1949.

On or about January 13th, 1949, Theodore Kulik, while operating a 1941 Chevrolet panel truck owned by Michael Horodysky, is alleged to have been involved in an accident at Camp Evans, New Jersey, as a result of which, one Jane Smock received injuries, report of which accident was sent to us.

We do not insure this vehicle or cover you or Theodore Kulik as a result of this accident, and have no further interest in this matter."

The intervenor brought this letter to the attention of his lawyer, Mr. Lipetz, who, on January 22, 1949, sent the following letter to the defendant company:

"Your letter dated January 18, 1949 addressed to George S. Kulik relative to the above entitled policy has been referred to me.

I note in your letter that you make no mention of any insurance covering a truck owned by Mr. Kulik. If you will examine your records you will note that there was an endorsement issued which covered the truck.

This is to advise you that Mr. Kulik will look to your company for any expenses or damages that accrue because of your failure to defend him in any actions which may result from an accident which occurred on January 13, 1949."

It was not until January 24, 1949 that the defendant company issued policy No. 510035 covering the intervenor's 1937 Chevrolet truck for the period beginning 7 P. M. on January 13, 1949 and ending 7 P. M. on January 13, 1950. The intervenor admitted that when he received this policy No. 510035 he took it to his attorney, Mr. Lipetz, and Mr. Lipetz informed him that this new policy did not cover him for the Smock accident. Despite this knowledge, the intervenor never made a complaint of any kind to the defendant company about the 7 P. M. beginning time of coverage contained in this policy until two years later when, in January 1951, he moved to intervene in the suit of Smock against the defendant company, which had been instituted on July 19, 1950. He admitted, further, that after the receipt of policy

No. 510035 on January 24, 1949, he made premium payments on the policy on April 7, 1949, on May 12, 1949, and on June 15, 1949; and while this policy was still in effect, also switched its coverage from his 1937 Chevrolet truck to a 1936 Chevrolet truck which he had purchased. When the papers in the Smock suit were served upon him, he brought them to his attorney, Mr. Lipetz, and authorized his attorney to handle the matter. Mr. Lipetz represented him at the trial of the Smock suit, in which a judgment of $15,000 was entered against him on April 5, 1950. He gave no notice to the defendant company of the institution of the Smock suit against him, of the trial thereof, or of the judgment entered.

The injured party must assert his remedy with diligence and without delay upon becoming aware of the fraud or mistake. Delay in the assertion of his remedy generally will be regarded as an acquiescence and a bar to any equitable remedy. 3 *Pomeroy's Equity Jurisprudence* (*5th ed.* 1941), § 917; 45 *Am. Jur., Reformation of Instruments*, § 75; *Knight v. Electric Household Utilities Corp.*, 133 *N. J. Eq.* 87 (*Ch.* 1943); cf. *Industrial Savings & Loan Co. v. Plummer*, 84 *N. J. Eq.* 184 (*E. & A.* 1914); *Dennis v. Jones*, 44 *N. J. Eq.* 513 (*E. & A.* 1888); *Ajamian v. Schlanger*, 20 *N. J. Super.* 246 (*App. Div.* 1952).

We are persuaded, as was the trial judge, that in the circumstances of this case, the conduct of the intervenor during the two-year period beginning in January 1949, with full knowledge that the coverage in policy No. 510035 did not begin until 7 P. M. on January 13, 1949, was such as to justify the holding that he acquiesced therein, and his acquiescence constitutes a bar to his belated claim for reformation thereof.

We find no merit in the contention that the trial court erred in failing to interpret the ambiguity appearing on the face of policy No. 510035 and in refusing to permit Exhibit P-11 (an automobile personal accident policy issued by the defendant company to this intervenor) to be introduced into evidence.

Judgment affirmed.